IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Kelly B., | ) |
|     *Plaintiff*, | ) |
| v. | ) Case No. 3:21-cv-50356 |
| Kilolo Kijakazi, | ) Magistrate Judge Lisa A. Jensen |
| Acting Commissioner of Social Security, | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kelly B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for a period of disability and disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

Plaintiff is a former 911 operator and office clerk with multiple sclerosis (MS) and "a myriad of physical impairments" that limit her range of motion in the wrist, lumbar, hip, knee, and ankle. R. 78–79. She filed an application for a period of disability and disability insurance benefits on March 12, 2019, alleging a disability onset date of January 13, 2019. R. 71–72. At the time of the application, Plaintiff was 52 years old. R. 71.

A remote hearing on Plaintiff's application was held before an administrative law judge (ALJ) on October 22, 2020. R. 13. At the hearing, Plaintiff testified that she has short-term memory problems. R. 42. She explained that her past work as a 911 operator required her to use a radio foot pedal "maybe a thousand times a day" to switch her headset between talking and listening,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 22.

1

similar to a walkie-talkie. R. 54–55. An independent vocational expert (VE) testified that Plaintiff's description reflected "frequent usage of a foot pedal" rather than constant usage. R. 63. Accordingly, the VE testified that Plaintiff actually performed the 911 operator position at a light exertion level rather than the sedentary exertion level set out in the *Dictionary of Occupational Titles* (*DOT*). R. 57. The VE acknowledged that she was "not familiar with the foot controls" for the 911 operator position, but she still believed that the position was generally performed at a sedentary level based on the *DOT*. R. 58.

The ALJ issued a written decision on February 18, 2021, finding that Plaintiff was not disabled under the applicable sections of the Social Security Act and thus not entitled to benefits. R. 24. At step one of the inquiry, the ALJ found that Plaintiff was not engaged in substantial gainful activity. R. 16. Although Plaintiff did some work as an office clerk after her alleged onset date, her supervisor did not enforce end-of-day work quotas and allowed Plaintiff to work at her own pace, making the work sheltered. R. 16. At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease in the thoracic, lumbar, and cervical spine, degenerative joint disease, osteoarthritis, rheumatoid arthritis, ankylosing spondylosis, multiple sclerosis, diabetes mellitus, trigeminal neuralgia, fibromyalgia, a history of a right fractured metatarsal with residual effects, a history of surgery on the bilateral thumbs with residual effects, and obesity." R. 16. However, the ALJ found that Plaintiff's allegations of "dyslexia with numbers, memory loss, and PTSD" were not medically determinable impairments because they were not supported by the medical record. R. 16. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment, including the listing for MS. R. 16–18. The ALJ then concluded that Plaintiff had the residual functional capacity (RFC) to perform light work with several restrictions, including being "limited to frequent use of foot controls." R. 18. Based on the

VE's testimony, the ALJ found at step four that Plaintiff could return to her past relevant work as a 911 operator or general clerk as those jobs were actually and generally performed. R. 22. The ALJ alternatively found at step five that a significant number of jobs existed in the national economy that Plaintiff could perform, such as office helper, small products assembler, or mail clerk. R. 23–24.

After the Appeals Council denied Plaintiff's request for review on August 4, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff argues that (1) the ALJ failed to adequately analyze whether her MS meets or equals Listing 11.09; (2) the ALJ erred in relying on the VE's opinion when finding that Plaintiff

3

could return to her past relevant work as a 911 operator; and (3) the ALJ did not analyze Plaintiff's purported limitations in concentration, persistence, pace, and attention resulting from her MS.

**A. Listing Analysis for MS**

Plaintiff first argues that the ALJ failed to adequately analyze whether she met Listing 11.09. A claimant is automatically eligible for benefits if she has an impairment that meets or medically equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. *Id.* § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms equal in severity and duration to those described in a specific listing. *Id.* § 404.1526(a). Plaintiff has "the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). However, the Seventh Circuit has clarified that courts must "review[] an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision." *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (citing *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020)).

Plaintiff argues that the ALJ failed to adequately analyze whether she meets or equals the paragraph B criteria of Listing 11.09,[2] which require a marked limitation in physical functioning and a marked limitation in one of four areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P,

---

[2] A claimant can satisfy the criteria for Listing 11.09 by meeting either the A criteria or the B criteria. Plaintiff concedes that "[t]he ALJ correctly found [Plaintiff] does not meet the A criteria of the listing." Pl.'s Mot. at 6, Dkt. 10.

App. 1, § 11.09B. A marked limitation in mental functioning is one that "seriously limits [the claimant's] ability to function independently, appropriately, and effectively on a sustained basis[] and complete work-related mental activities." *Id.* § 11.00G2. As defined in the listings, "'marked' would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." *Id.*

Here, the ALJ found that

> [Plaintiff's] multiple sclerosis does not meet or medically equal the requirements of listing 11.09 or any other relevant listing, as the records do[] not document . . . marked limitation (11.00G2) in physical functioning (11.00G3a), and in one of the following: understanding, remembering, or applying information (11.00G3b(i)); interacting with others (see 11.00G3b(ii)); concentrating, persisting, or maintaining pace (11.00G3b(iii)); or adapting or managing oneself (11.00G3b(iv)).

R. 17. Plaintiff argues that this is the type of perfunctory analysis prohibited by *Minnick*, and she further argues that the ALJ failed to analyze all of the evidence supportive of a marked limitation in her ability to "concentrate, understand and maintain attention and focus." [3] Pl.'s Mot. at 7, Dkt. 10.

In response, the Commissioner argues that the ALJ's analysis was adequate because it identified Listing 11.09 by name and offered a more than perfunctory analysis.[4] The Court is not prepared to say the ALJ's one-paragraph analysis, standing alone, is more than perfunctory. *See Jeske*, 955 F.3d at 589 (noting that "[t]he ALJ's initial discussion was certainly brief").

---

[3] This language does not track any of the four limitations; it appears to be a partial combination of 11.00G3(b)(i) and (iii). The Court believes that the ALJ sufficiently analyzed both of these sections of the listing.

[4] The Commissioner also argues that the ALJ's decision should be upheld because "[b]oth state agency physicians . . . completed Disability Determination and Transmittal forms, showing that [P]laintiff did not meet or equal a listing despite recognizing multiple sclerosis was one of her diagnoses." Def.'s Resp. at 6–7, Dkt. 15. Plaintiff offers nothing in reply to this argument.

However, the Court agrees with the Commissioner that the ALJ's listing analysis is adequate when considered in light of the decision as a whole and that it sufficiently addresses why the ALJ determined that Plaintiff did not have a marked limitation in her ability to concentrate, understand, and maintain attention and focus. At steps two and four, the ALJ cited medical evidence that Plaintiff had normal memory on testing, and she had previously denied memory problems when questioned by her physicians. R. 16, 20. At step four, the ALJ cited to medical evidence indicating that Plaintiff's "mood and affect were appropriate," "she exhibited normal recent and remote memory," and "her attention span and concentration were normal." R. 21. The ALJ also noted that Plaintiff engaged in independent self-care activities such as driving, shopping, paying bills, counting change, and managing finances. R. 19. Because the Court can follow the ALJ's "overlapping reasoning" and the other portions of the decision "doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing," the Court finds that the ALJ has satisfied his obligation to draw a logical bridge from the evidence to his conclusion that Plaintiff is not presumptively disabled. *Jeske*, 955 F.3d at 589; *Zellweger*, 984 F.3d at 1255.

The Commissioner also notes that Plaintiff has not identified any medical evidence in the record that she has a marked limitation in mental functioning. Plaintiff points only to her testimony that she has "short-term memory problems." Pl.'s Mot. at 8, Dkt. 10. However, she points to no medical evidence to substantiate her allegations of memory problems, let alone any evidence or argument as to how any such problems rise to the level of "marked," as required by the listing. Plaintiff argues that the ALJ could not discredit her testimony "solely because there [wa]s no objective medical evidence supporting it." *Id.* (citing *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017)). Although this rule does apply when the ALJ is evaluating a claimant's overall

6

credibility, as in *Vanprooyen*, Plaintiff fails to recognize that the standard for a listing analysis is different. When a claimant alleges that her condition meets or equals a listed impairment, the claimant has the burden to present medical findings that match or equal the severity of all of the criteria specified by the listing. *Hapner v. Saul*, 818 F. App'x 552, 557 (7th Cir. 2020) (unpublished) (quoting *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009)); *see also* 20 C.F.R. §§ 404.1525(c)(3), 404.1529(d)(3). When considering medical equivalence, the ALJ cannot "substitute [the claimant's] allegations of pain or other symptoms" for that evidence. 20 C.F.R. § 404.1529(d)(3); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("[20 C.F.R. § 404.1529(d)(3)] provides that an ALJ will not consider the individual's own allegations if the medical evidence demonstrates a lack of severity. It is a straight prohibition against substituting an individual's symptoms for objective medical evidence.").

There being no medical evidence to support Plaintiff's claims of marked mental impairments, the ALJ did not err in determining that Plaintiff did not meet or equal Listing 11.09. Moreover, it was not solely the lack of medical evidence that the ALJ relied upon to determine that Plaintiff did not satisfy the paragraph B criteria of Listing 11.09. Here, the ALJ relied on evidence that explicitly *contradicted* her testimony that she suffered short-term memory problems, including the normal results from objective memory tests and Plaintiff's previous denial of memory problems. R. 16, 20–21.

Plaintiff also states that "[w]hile working as an office helper[,] her mental impairments were accommodated." Pl.'s Mot. at 8, Dkt. 10. This, she argues, is further evidence of her marked mental limitations. Although Plaintiff did testify that her "boss was very lenient" and did not impose deadlines, R. 52, the only indication that Plaintiff received this accommodation because of "her lapses in memory and slow pace" comes from her counsel's brief, not from her testimony or

7

any other cited evidence in the record. *See* R. 242. The ALJ did not err by declining to treat Plaintiff's testimony regarding her sheltered work as affirmative evidence of marked mental limitations.

In her reply to the Commissioner's arguments, Plaintiff concedes that "the record does not contain mental health treatment" but says the ALJ should still have accounted for the well-known and well-understood mental impacts of MS. Pl.'s Reply at 2, Dkt. 20. This is, of course, the exact opposite of what an ALJ is supposed to do. *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (unpublished) ("[An ALJ] may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record."). Plaintiff would rightly cry foul if the ALJ had discounted all medical evidence supporting her claim for disability and based his decision on what he felt was well known and well understood.

The ALJ's step-three analysis of Plaintiff's MS was adequately explained and supported by substantial evidence. Accordingly, the Court finds no error at step three.

**B. VE Testimony on 911 Operator Position**

Plaintiff challenges the ALJ's conclusion that she could return to her past relevant work as a 911 operator because (1) the VE's testimony about the position was incomplete and out of date, particularly because it relied on the "obsolete" *DOT* and (2) Plaintiff testified that her use of the foot pedals was constant, not merely frequent as the VE determined. Pl.'s Mot. at 9–11, Dkt. 10.

The Commissioner declines to engage with Plaintiff's arguments, however, because the ALJ also found at step four that Plaintiff could return to her past relevant work as a general clerk, and alternatively found at step five that Plaintiff could adjust to other work in the national economy. Def.'s Resp. at 8–10, Dkt. 15. The Commissioner argues that Plaintiff failed to argue that these alternate findings by the VE were erroneous and as such she has waived any such

8

argument. The Court agrees. Because the VE testified that other, unchallenged positions remained available, any error regarding the 911 operator position was harmless. *See, e.g.*, Z*blewski v. Astrue*, 302 F. App'x 488, 494–95 (7th Cir. 2008) (unpublished) (collecting cases).

In her reply brief, Plaintiff attempts to broaden her argument by suggesting that the VE's opinion on the 911 operator position "was indicative that [the VE's] testimony was unreliable," so the ALJ should have discounted *all* of the VE's testimony as "inconsistent and not based on reliable sources." Pl.'s Reply at 3, Dkt. 20. This broader argument was not raised in Plaintiff's opening brief, and the Court need not address an argument raised for the first time in a reply brief. *Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018) (unpublished) (adding arguments in district-court reply brief is "too late to avoid waiver") (citing *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002)). Even on its merits, the argument fails.

The only purported flaws in the VE's testimony involve the 911 operator position. Plaintiff does not explain how the remainder of the VE's testimony is inconsistent, unreliable, or out of date. Moreover, Plaintiff's counsel actually cross-examined the VE at the hearing and stated that the VE's approach was "[p]robably one of the better methodologies" she had encountered. R. 67. The Court has no trouble finding that the VE's testimony constitutes substantial evidence for the ALJ's remaining findings at steps four and five, a standard the Supreme Court has stressed is "not high." *Biestek*, 139 S. Ct. at 1154.

Accordingly, the Court finds that any errors Plaintiff has identified at step four are harmless and do not warrant remand.

**C. Mental Limitations**

In the final two paragraphs of her brief, Plaintiff argues that her MS limits "her ability to maintain concentration, persistence, pace, and attention." Pl.'s Mot. at 11, Dkt. 10. According to

9

Plaintiff, if the ALJ had factored these limitations into her RFC, it would have precluded her semi-skilled past relevant work and, "with a flexible application of the grid rules, should have resulted in a directed finding of disability." *Id.* at 11–12.

But as set forth above, the ALJ analyzed Plaintiff's claims and pointed to medical records that contradicted such claims, such as those describing normal attention span and concentration, and normal recent and remote memory. R. 16, 20–21. The ALJ also pointed to Plaintiff's ability to drive, shop, pay bills, count change, and manage finances, as well as her specific denial of memory problems. R. 16, 19. This evidence supported the ALJ's determination to not include mental limitations in Plaintiff's residual functional capacity finding. *Curvin*, 778 F.3d at 651 ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong.").[5]

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: January 6, 2023          By: _Lisa A. J_____
                                    Lisa A. Jensen
                                    United States Magistrate Judge

---

[5] The Court also agrees with the Commissioner that application of the grid rules would have resulted in a finding that Plaintiff was not disabled, and the ALJ was under no obligation to apply the grid flexibly, even if Plaintiff had identified a basis for doing so. *See Price v. Heckler*, 624 F. Supp. 532, 536 (N.D. Ill. 1986) ("Since plaintiff failed to establish the requisite nonexertional limitations, it was not error for the ALJ to mechanically apply the Grid and deny disability.").